**Elma Jeanette CRAWFORD, Plaintiff,**

v.

**ITT CONSUMER FINANCIAL CORPORATION, Defendant.**

**No. C–1–85–0720.**

United States District Court, S.D. Ohio, W.D.

Oct. 14, 1986.

James B. Helmer, Jr., Ann Lugbill, Virginia Conlan Whitman, Cincinnati, Ohio, for plaintiff.

Peter Tamborski, Smith & Schnacke, Cincinnati, Ohio, for defendant.

## ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

SPIEGEL, District Judge.

This matter came on for consideration of defendant's motion for summary judgment (doc. 28), which is opposed by plaintiff (doc. 38). Defendant submitted a reply memorandum (doc. 40), and oral arguments were heard in this matter on September 20, 1986. This case grows out of a dispute over a series of events relating to the conditions of plaintiff's employment and over the characterization of plaintiff Crawford's departure from her position as Assistant Manager for defendant corporation (CFC). The facts indicate that plaintiff, at age eighteen (18), was employed by the defendant on June 12, 1961 as a secretary. Plaintiff worked for defendant for over twenty three years and was forty-one (41) years old at the time of the events at issue in this case. In July, 1979, plaintiff was promoted to the position of Assistant Manager. It is undisputed that at the time of the promotion a written document was executed and signed by plaintiff's supervisor and his superior which stated in essence that, if plaintiff accepted the promotion, she would not be required to promote or relocate as a condition of employment. During her tenure with defendant CFC, it is undisputed that plaintiff was a good employee, who received commendations for her performance.

The events which culminated in this law suit appear to have begun in the fall of 1984. On October 2, 1984, plaintiff received an annual performance appraisal in writing from Mr. Stowell, a CFC Manager and plaintiff's supervisor. Plaintiff received an overall rating of "2" on a scale of 1 to 5, with "1" being the best possible rating. On October 10, 1984, Divisional Director Michael Harter, who had assumed responsibility early in 1984 for the Region in which plaintiff Crawford worked, held a meeting for all Assistant Managers in the Region. Plaintiff alleges he announced a "new company policy" on promotion and relocation requirements. Defendant contends that Harter restated a long-standing CFC policy which provides that refusal to accept promotion and relocation is grounds for termination but that it is applied on a case-by-case basis.

Sometime between October 2 and October 19, Harter admits he had Stowell down-

grade plaintiff's overall rating from a 2 to a 3 on her performance appraisal as well as the rating she had received in the area of "delinquency control." On October 19, Stowell met with plaintiff to discuss the performance appraisal. On October 26, Stowell issued a written memo to plaintiff documenting the matters discussed at the October 19 meeting. The memo refers to the problem of "delinquency control," indicates that plaintiff's progress would be evaluated in twenty days, and further states: "We also discussed the new company policy that assistant managers who are unwilling to relocate must be dismissed." The discussion that ensued on October 26 apparently culminated in plaintiff's becoming upset, hyperventilating, and fainting. Plaintiff did not return to work following this incident. Subsequently, plaintiff was treated for psychological and physical disorders.

Plaintiff sets forth seven causes of action as the bases for relief.

Plaintiff claims:

1) that she was terminated on the basis of age in violation of the Federal Age Discrimination In Employment Act (ADEA);

2) that she was terminated on the basis of age in violation of Ohio Rev.Code § 4112.02(A) and (N);

3) that she was terminated on the basis of her gender in violation of Title VII of the Civil Rights Act;

4) that her termination constituted a breach of an express contract between the parties;

5) that her termination constituted a breach of an implied contract;

6) that she reasonably relied, to her detriment, on a promise made by defendant regarding the conditions of her employment, which reliance resulted in injury to plaintiff on defendant's breach of the promise; and

7) that her termination constituted an intentional infliction of emotional distress.

Defendant has moved for summary judgment on all seven counts.

In considering a motion for summary judgment, the narrow question we must decide is whether there is "no genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether there are issues to be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). The moving party "has the burden of showing *conclusively* that there exists no genuine issue as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.) (emphasis original), *cert. denied*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). And, "while the movant's papers are to be closely scrutinized, those of the opponent are to be viewed indulgently." *Id.* at 63. "[T]he District Court [is] obligated to consider not only the materials specifically offered in support of the motion, but also all 'pleadings, depositions, answers to interrogatories, and admissions' properly on file and thus properly before [the] court." *Id.*, quoting Rule 56(c), Fed.R.Civ.P. Summary judgment "must be used only with extreme caution for it operates to deny a litigant his day in court." *Id.*

We have examined the pleadings and documents and considered the oral arguments in this case, relating to the motion for summary judgment, and conclude that defendant has failed to show conclusively the existence of no genuine issues of material fact to mandate summary judgment as a matter of law on counts one through six, but defendant has conclusively shown that there are no such issues to support the cause of action recited in count seven. Thus, summary judgment is denied on counts one through six and granted on count seven.

I. *Federal (ADEA) and State (Ohio Rev. Code) § 4112.02(N) Age Discrimination Claims*

■ The Sixth Circuit has adopted a standard for establishing a *prima facie*

case of age discrimination under the ADEA that is modeled on the standard set forth by the Supreme Court in cases of race discrimination. *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Wilkins v. Eaton Corp.,* 790 F.2d 515 (6th Cir.1986). Plaintiff will establish a *prima facie* case on showing that:

1) Plaintiff falls within the protected age group, *i.e.,* between ages 40 and 70;

2) she was qualified for the position;

3) adverse employment actions were taken against her or that she was discharged;

4) she was replaced by a younger person.

Similarly, Ohio courts have applied this same standard in state age discrimination claims. *McLauren v. Fisher,* 768 F.2d 98 (6th Cir.1985); *Barker v. Scovill, Inc.,* 6 Ohio St.3d 146, 451 N.E.2d 807 (1983). Thus, to defeat plaintiff's state and federal age discrimination claims, defendant must show that plaintiff has failed to allege genuine issues of material fact as to at least one of the four requirements to state a *prima facie* case for age discrimination.

Defendant does not dispute that plaintiff meets the first two requirements: defendant admits that plaintiff was a member of the protected class and that she was qualified for the position. Defendant argues, however, that plaintiff has alleged no facts that reasonably could be found to support a finding that plaintiff was discharged or that adverse action was taken against her or that she was replaced by someone outside the protected group. Defendant argues that it has never discharged plaintiff, that her name still appears on the CFC list of employees, that she received salary benefits for some months after the October 26 incident, and that defendant is presently interested in having plaintiff return to her position. Defendant concludes that, because it did not discharge plaintiff, there can be no showing of any replacement of plaintiff by someone not in the protected

group—the fourth element required to establish a *prima facie* case.

■ We find to the contrary that there are genuine issues raised concerning the discharge and replacement of plaintiff. First, it is well-established that in an age or sex discrimination case the plaintiff may allege constructive, rather than actual, discharge. This Court has held that the standard for determining if there has been a constructive discharge is whether "working conditions are so difficult, or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign ..." *Rimedio v. Revelon, Inc.,* 528 F.Supp. 1380, 1389–1390 (S.D.Ohio 1982) (Spiegel, J.), We apply this standard for constructive discharge to the events, facts, and circumstances which led up to, and culminated in the events of October 26, 1986. We find that these facts raise a genuine question of whether there was a constructive discharge as of this date, and, we note that events or perceptions of either plaintiff or defendant subsequent to October 20 will not by themselves mandate summary judgment or defeat a finding of constructive discharge but will merit some weight by the trier of fact.

In the fall of 1984, plaintiff was operating on the belief that she would not be subject to promotion or relocation, according to the terms of her 1979 agreement with defendant CFC. Her supervisor Stowell apparently was aware of this agreement and we can assume, as a matter of agency law, that through managerial lines of communication Harter was, or should have been, aware of this agreement. The sequence of events shows that prior to the Harter meeting of October 10, plaintiff received a very good performance evaluation just as she had in foregoing years, but after the meeting, which covered the issue of terminating assistant managers who refused to relocate or promote, plaintiff was downgraded. Also, at this time, plaintiff alleges she was "counseled" about the policy on a number of occasions, and reference to the policy was included in Stowell's memo of October 26, which documented his discussion with plaintiff following her per-

formance appraisal. At other times during this period, Stowell is alleged to have stated that plaintiff would be fired under the new policy, that he agreed that the treatment of plaintiff was discriminatory, and that he advised her to consult an attorney. Plaintiff also alleges that at her October 29 meeting with Stowell she was put on a 30–day action plan to improve her performance in "delinquency control," in addition to being told about being fired on the basis of her unwillingness to relocate. At this meeting, plaintiff complained that younger males with similar "delinquency control" problems were not being so treated. As noted above, this meeting ended in plaintiff's hyperventilating and fainting.

Defendant argues that plaintiff was never put on a 30–day action plan. However, in defendant's Exhibit 6, which is a copy of the memo issued by Stowell regarding the performance evaluation discussion with plaintiff, Stowell makes reference to a review to be held in 30 days on those areas of plaintiff's work in need of improvement. Defendant also argues that plaintiff was not treated differently than younger males. It appears that the annual performance appraisal dates of the younger males referred to had not come to pass at the time of the events in October and that, ultimately, they received as low or lower marks than plaintiff in the area of "delinquency control." Nonetheless, plaintiff's allegation that she was the only one singled out by having "good" marks changed to "bad" appears undisputed and at least raises a question of fact. Further, the question at hand is whether all of the facts and circumstances raise a material question of whether the plaintiff reasonably had a subjective belief that adverse action was being taken against her, that she was being "forced out," or that she was soon to be fired. Further, a question arises as to whether the plaintiff's belief that "the handwriting was on the wall" was reasonable. We believe that the facts alleged and the inferences drawn therefrom raise such genuine issues of material fact.

All that remains for plaintiff to succeed in establishing a *prima facie* case for age discrimination under state and federal law is a showing that she was replaced by someone not in the protected group. The documents indicate that plaintiff's duties were assumed by a twenty-five year old male. Defendant argues that there was no termination and that a number of individuals assumed plaintiff's duties, though defendant grants that at least some of these people were not in the protected group. Having concluded that a genuine issue of material fact exists as to the question of constructive discharge, the plaintiff has sufficiently alleged facts to raise a question of whether she was replaced by a younger male. Hence, plaintiff has successfully stated a *prima facie* case for age discrimination and motion for summary judgment on counts one and two is denied.

## II. *Damages Under Ohio Rev.Code § 4112.02(N) (State Age Claim)*

Plaintiff argues that Ohio Rev.Code § 4112.02(N) provides for recovery of compensatory and punitive damages on a showing that an individual's rights have been abridged, pursuant to the Act. Defendant argues that § 4112.02(N) does not authorize an award for compensatory or punitive damages and that plaintiff's claim for such damages should be stricken.

The construction of § 4112.02(N) is a matter of first impression for this Court. Absent construction of this section of the statute by the Ohio courts, it is the job of this Court to determine the matter as we think the Ohio Supreme Court would decide the question.

Defendant argues that because compensatory and punitive damages are not available under the ADEA they are not available under plaintiff's § 4112.02(N) state age claim. Defendant contends that the ADEA was a model for the Ohio statute and that relief under the state law should be similar. Also, in a footnote, defendant argues that if this Court finds that compensatory and punitive damages are available under state law that the action is preempt-

ed by the ADEA. We are unpersuaded by defendant's arguments.

■ Unlike the ADEA, Ohio law provides aggrieved parties three avenues of recourse for alleged discrimination on facts similar to those in the present case. *See* § 4112.05; § 4101.17; and § 4112.02. The nature of the actions—administrative or adversarial; the statutes of limitations; and the scope of relief vary in the three causes of action available under Ohio law. Finally, on the matter of the ADEA preempting an action brought under § 4112.02(N), we agree with plaintiff's assessment that Congress enacted federal civil rights laws to supplement state law in the areas of race, religion, and handicap, and, absent indications of contrary Congressional intent, we find no compelling reason to conclude that the availability of additional relief under state law in an age case is preempted.

Looking at the provisions of the Ohio statute alone, we consider two other arguments raised by defendant. Defendant points out that §§ 4112.05 and 4101.17 have been construed to preclude compensatory and punitive damages, and, defendant concluded § 4112.02(N) should be construed similarly as a matter of internal statutory consistency. We disagree.

Section 4112.05 provides an aggrieved individual with the prospect of a speedy, cost-effective resolution of the dispute before the Ohio Civil Rights Commission (OCRC), subject to judicial review on the request of either party to the dispute. The remedies language crafted by the legislature for those who chose to take advantage of the Commission's services, provides that the Commission shall:

... cause to be served on such respondent as an order requiring such respondent to cease and desist from such unlawful discriminatory practices and to take such further affirmative or other action as will effectuate the purposes of sections 4112.01 to 4112.08 of the Revised Code, including but not limited to being reinstatement or upgrading of employees with or without, back pay, admis-

sion or restoration to union membership ...

The fact that § 4112.05(G) has been construed not to provide compensatory or punitive damages appears consistent with the administrative relief set forth in the statute as well as to comport with the plain language of the statute, which provides for a range of equitable relief not to be limited by the list set forth in the statute.

Section 4101.17(B) provides for an aggrieved bringing a civil action in cases where there is a claim of age discrimination in the hiring or firing of an individual in the protected group. Section 4101.17(B) provides in pertinent part:

If the court finds that an employer has discriminated on the basis of age, the court shall order an appropriate remedy which shall include reimbursement to them for the costs, including reasonable attorney fees, of the action, or to reinstate the employee in his former position with compensation for lost wages and any lost fringe benefits ...

■ In a recent case, the Sixth Appellate District of Ohio concluded that the relief set forth in the provision was inclusive and had the legislature contemplated additional legal relief, it would have provided for it, implicitly or explicitly. *See South v. The Toledo Edison Co.,* C.A. No. L–85–083 (Lucas County, March 21, 1986) [Available on WESTLAW, OH–CS database]. On July 30, 1986, the Ohio Supreme Court overruled a motion to certify the *South* case. Prior to the Ohio court's construction of this provision, this Court had concluded that the "appropriate remedy" language of § 4101.17(B) contemplated more than the enumerated relief in the statute. *Merkel v. Scovill, Inc.,* 570 F.Supp. 133, 149–150, 573 F.Supp. 1055, 1061. Now that the state court has spoken on this matter, we defer to its construction of § 4101.17(B), but we do not find the decision in *South* in conflict with our finding that compensatory and punitive damages are contemplated under § 4112.02(N).

We turn first to the plain language of § 4112.02(N). It provides in relevant part:

An aggrieved individual may enforce his rights relative to discrimination on the issues of age as provided for in this section by instituting a civil action ... in any court of competent jurisdiction for any legal or equitable relief that will effectuate his rights.

Plaintiff correctly notes that where the statutory language is plain, the function of this Court is to enforce the statute by its terms. *Caminetti v. United States,* 242 U.S. 470, 476 (1917). By the statute's express terms, relief is to encompass "any legal or equitable relief ..."

Section 4112.02(N) creates a private right of action to bring a civil suit in any court of competent jurisdiction "for any legal or equitable relief that will effectuate his rights." This language, we conclude, is by its terms much more broad than the "adequate relief" language of § 4101.17(B). Additionally, this language stands alone and is not accompanied by a statutory laundry list of equitable relief as are §§ 4101.-05(G) and 4101.17(B).

Looking at the plain language of § 4112.-02(N) we can only conclude that when the legislature explicitly included legal relief it intended to do so. As plaintiff notes, plain language "is not to be disregarded because we believe the framers of the instrument could not intend what they say." *Starges v. Crowninshield,* 4 Wheat (17 U.S.) 122, 202–203, 4 L.Ed. 529 (1819). Finally, § 4112.08 of the statute instructs the Court to liberally construe § 4112.02(N):

The provisions of sections 4112.01 to 4112.08 of the Revised Code shall be liberally construed for the accomplishment of the purposes thereof ...

Until the legislature or state courts tell us that the plain language of § 4112.02(N) does not apply, we conclude that compensatory and punitive damages are available under § 4112.02(N). Thus, defendant's motion to strike plaintiff's claims for compensatory and punitive damages under § 4112.02(N) is denied.

III. *Title VII Sex Discrimination Claim*

 Plaintiff, in Count 3 of her complaint, alleges that she was discriminated against in her employment on the basis of her sex in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* Defendant moves for summary judgment on the grounds that plaintiff has failed to establish a *prima facie* case of sex discrimination. Plaintiff and defendant agree that the showing for this cause of action mirrors that required to establish a cause of action under the state and federal age discrimination remedial statutes outlined above. *Edwin L. Wiegard Co. v. Jurinko,* 414 U.S. 970, 94 S.Ct. 293, 38 L.Ed.2d 214 (1973); *Jacobs v. Martin Sweets Co., Inc.,* 550 F.2d 364, 371 n. 14 (6th Cir.1977). Much of the factual support for this claim is the same as that alleged by plaintiff in her age discrimination counts. Plaintiff has also provided affidavits from other women formerly employed by defendant, alleging that they were discriminated against on the basis of their gender.

This Court has held that plaintiff establishes a *prima facie* case of employment discrimination by showing that she was treated differently from similarly situated male employees because of her sex. *Rimedio,* at 1388. Here, as in the age claims, it is undisputed that plaintiff is in the protected class and that she was qualified for the position of Assistant Manager. *See* our finding above that plaintiff has raised genuine issues of material fact on the matter of constructive discharge, applying the standard set forth in *Rimedio.* On the issue of disparate treatment, plaintiff has alleged that she was downgraded for "delinquency control" problems and put on a 30–day action plan, while her male counterparts were not. The question of whether the downgrading of plaintiff constitutes disparate treatment when contrasted with the mere low ratings of her male counterparts presents a question of fact for the trier of fact, rather than one of law for the Court. Further, plaintiff alleges that her male counterparts received no written memo regarding the new policy requiring Assistant Managers to relocate and promote or face termination and that they

were not individually "counseled" on this policy as she was. Plaintiff also alleges that she confronted her superior, Stowell, with her belief that she was being treated differently from her counterparts and that he did not disagree.

We believe that these facts alleged by plaintiff and the inferences drawn therefrom are sufficient on the issue of disparate treatment to establish a *prima facie* case of sex discrimination. Defendant's arguments that it had a legitimate non-discriminatory purpose for the action it took with regard to plaintiff concerning her performance appraisal and the new policy on relocation do no more than raise genuine issues of fact for the trier of fact. Thus, defendant's motion for summary judgment on plaintiff's Title VII cause of action in Count 3 is denied.

### IV. *Breach of Contract and Promissory Estoppel Claims*

■ Plaintiff alleges three causes of action based on contract law in counts four, five, and six of her complaint. These three claims relate to the same or similar facts alleged by plaintiff and can be treated together for purposes of defendant's motion for summary judgment. We find that there are genuine issues of material fact regarding the existence of an express or implied contract between the parties and of the alleged breach of contract. In addition to plaintiff's contract claims based on written and oral representations, she has asserted sufficient facts to raise a jury question of whether the defendant made a promise to plaintiff on which she reasonably relied to her detriment. *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 483 N.E.2d 150 (1986). Thus, summary judgment in favor of defendant on counts four, five, and six is denied.

The facts indicate, and defendant does not dispute, that a written document was executed and signed by plaintiff's supervisor and signed by his superior in July of 1979. This memorandum states, generally, that if plaintiff accepted a promotion to the position of Assistant Manager, she would be exempt from defendant's policy which required that Assistant Managers show a willingness to promote and relocate or face termination. Plaintiff alleges that on the basis of this document and other oral representations, she accepted the position of Assistant Manager. The facts state, and it is undisputed by defendant, that prior to the July, 1979 memo, plaintiff had refused promotion on a number of occasions because personal and family reasons precluded her from accepting promotion and relocation as a condition of employment.

■ The defendant argues that, under plaintiff's employment contract, she is an at-will employee. It is settled law in Ohio that an at-will employee may be terminated for any reason or no reason at all. However, there are two additional points that bear on the matter at hand. First, an employer may contract with its employee to alter the terms and conditions of employment. Second, an employer's freedom to terminate at-will is limited by state and federal law prohibiting unlawful termination on the basis of sex, race, age, religion, or handicap. Thus, in our view, defendant CFC was free to terminate plaintiff for any reason, except on the basis of a statutorily prohibited classification, and we find that plaintiff has raised genuine issues of material fact as to whether defendant was prohibited or estopped from terminating plaintiff on the basis of her unwillingness to relocate. In regard to defendant's argument that there can be no breach of contract on its part because it did not terminate plaintiff, see our discussion of constructive discharge in the context of plaintiff's age and sex discrimination claims. For the same reasons, we conclude that there are genuine issues of material fact to plaintiff's breach of express and implied contract and promissory estoppel claims. Therefore, defendant's motion as to counts four, five, and six must be denied.

### V. *Intentional Infliction of Emotional Distress*

Ohio recognizes a cause of action for intentional infliction of emotional distress

(IIED). *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 453 N.E.2d 666 (1983). The parties agree that in *Yeager* the Ohio Supreme Court expressly adopts the view of IIED set forth in Section 46 of the Restatement (Second) of Torts. Defendant points out, correctly, that it is for the Court in the first instance to determine whether "defendant's conduct may be regarded as so extreme and outrageous as to permit recovery." R2d, Torts; § 46 (comment h). Defendant's conduct must be "extreme and outrageous" in order to assert an IIED cause of action. Both the Ohio Supreme Court in *Yeager* and the Sixth Circuit in *Polk v. Yellow Freight System*, 801 F.2d 190 (1986) have adopted the standard set forth in comment d to Section 46 for determining whether the "extreme and outrageous" requirement has been met:

> ... It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an inflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. *See* Magruder, Mental and Emotional Disturbance in the Law of Torts, [49] Harvard Law Review 1033, 1053 (1936)....

Taking as true all of the allegations made by plaintiff regarding defendant's conduct toward her, we cannot find that the conduct asserted rises to the level of being so extreme and outrageous so as "to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." We find that the alleged pattern of pressure and harassment of plaintiff; the intentional downgrading of plaintiff's performance appraisal; the threats of demotion and/or termination, all of which conduct may be assumed to have resulted in causing plaintiff to suffer serious embarrassment and humiliation, as well as psychological and physical problems, do not, as a matter of law, state a viable claim for IIED. Defendant argues that the courts have stringently applied the Restatement (Second) standard in the context of employment actions. We agree. We have reviewed the relevant case law in other jurisdictions as well as our own and conclude that defendant's motion for summary judgment on plaintiff's IIED claim must be granted.

## VI. *Damages Available in an Action Based on Contract*

The final issue we must address is the defendant's contention that plaintiff's remedy, if any, on the contract claims, is limited to back pay. Plaintiff, on the other hand, claims that she may be awarded compensatory and punitive damages.

### Punitive Damages

The law in Ohio is that punitive damages will only be available in a case in which the conduct of the defendant amounts to an independent tort. *Ketcham v. Miller*, 104 Ohio St. 372, 136 N.E. 145 (1922). An independent tort arises where there is "a violation of some duty imposed upon a party by law, independent of contract or the

will of either." *Battista v. Lebanon Trotting Ass'n.*, 538 F.2d 111, at 117 (1976). Plaintiff has alleged the tort of intentional infliction of emotional distress, but we have concluded that the facts alleged do not support such a claim.

▪ Plaintiff also argues that her claim for punitive damages would be appropriate on a showing that defendant has breached a covenant of good faith or fair dealing to be implied from the contract between the parties. Defendant contends, correctly, we believe, that the Ohio Supreme Court has rejected the notion that a covenant of good faith or fair dealing should be implied in an at-will employment relationship. *See Mers.* Plaintiff filed a motion for leave to file a supplemental brief on this issue (doc. 47). We have considered plaintiff's supplemental brief and conclude that in the typical situation where the employment agreement between the parties creates an at-will employment relationship, the doctrine of good faith and fair dealing is inapplicable. The parties agree that the 1961 employment agreement between plaintiff and defendant created an at-will relationship. The second contract at issue in the case is the 1979 memorandum which ostensibly precluded defendant from requiring plaintiff to relocate or promote. While such an agreement may be construed to bind defendant to its promise, the underlying at-will status of the employment contract remains otherwise unaffected.

Plaintiff directs our attention to the fact that in *Mers* the Ohio Supreme Court considered the issue of whether parties to an oral employment-at-will agreement must act in good faith and would have us find that the present case is distinguished because the agreement relating to relocation and promotion was in writing. We disagree. We are unable to find that the differences in the facts in the instant case—specifically the existence of the written rather than oral promise—justify a finding that *Mers* is not controlling on this issue. We are unwilling to find that the parties to a written at-will employment agreement are subject to an implied covenant of good faith and fair dealing, while the parties to an oral at-will employment agreement are not. Thus, we conclude that, assuming plaintiff were to prevail on her contract claims, she cannot, as a matter of law, recover punitive damages on the facts alleged.

*Compensatory Damages*

▪ Plaintiff alleges that she may recover damages that go beyond the usual "benefit of the bargain" or "expectancy" damages in a breach of contract case. In effect, plaintiff argues that she may recover "consequential" damages under the rule set forth in the leading case on this issue, *Hadley v. Baxendale*, 9 Exch. 341 (1854). The *Hadley* Court held that plaintiff may recover those damages which "may fairly and reasonably be considered either arising naturally, *i.e.*, according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of the parties at the time the contract was made, as the probable result of the breach of it." The touchstone for establishing a claim for consequential damages is a showing that such damages were foreseeable. Ohio law recognizes the recovery of consequential damages, *i.e.*, the compensation of plaintiff for the natural, necessary, and probable injuries resulting from a wrongful act. *Smith v. Pittsburgh, Ft. W. & C. R. Co.*, 23 O.S. 10; *See* 30 Ohio Jur.3d *Damages* § 13.

In the instant case, if the plaintiff is successful on her breach of contract claims, the Court, as trier of fact, will address the question of whether plaintiff has established that the damages asserted, which go beyond the benefit of the bargain, arose from the breach and whether they were foreseeable. Defendant argues that plaintiff cannot be compensated for mental distress in a breach of contract case in the employment context. However, plaintiff must first prove causation and foreseeability for any consequential damages claim as a threshold matter. Thus, we reserve judgment on this issue until all of the evidence has been heard.

Accordingly, defendant's motion for summary judgment (doc. 28) is denied on counts one through six and granted on count seven, intentional infliction of emotional distress.

SO ORDERED.