904 F.2d 37
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Joseph R. VEHEC, Plaintiff-Appellant,
v.
FIRST CATHOLIC SLOVAK UNION OF the UNITED STATES AND CANADA,
Joseph R. Kristofik, Cyril M. Ferenchak, Steven G.
Luca, and John Yencik, Defendants-Appellees.
 No. 89-3869.
 United States Court of Appeals, Sixth Circuit.
 May 29, 1990.
 
 Before KENNEDY and RYAN, Circuit Judges, and JULIAN ABELE COOK, Jr., Chief District Judge.[1]
 PER CURIAM:
 
 
 1
 Appellant Joseph R. Vehec brought this action against his former employer, the First Catholic Slovak Union of the United States and Canada (FCSU), a non-profit fraternal benefit society; Joseph R. Kristofik, the society's president; Cyril M. Ferenchak, the society's treasurer; Steven G. Luca, a member of the society's board of directors; and John Yencik, a marketing consultant of the society. In his amended complaint, appellant asserted the following causes of action: breach of contract; malicious violation of state and federal constitutional rights to due process; malicious violation of the FCSU by-laws; intentional infliction of emotional distress; and defamation. The District Court granted appellees' motion for summary judgment on all claims. We AFFIRM the judgment of the District Court.
 
 
 2
 FCSU is a private, non-profit association whose members share a common religious and ethnic heritage. It is administered by various "supreme officers," including an executive secretary, in accordance with its own by-laws. In 1982, appellant was elected to serve a three-year term as executive secretary. As such, he received a salary and the use of living quarters and office space on the premises of the FCSU home office in Cleveland. His responsibilities included financial management and record keeping for the entire organization. In August of 1985, the regular convention of the FCSU re-elected him for a second term of office, to run until March of 1989.
 
 
 3
 Audits conducted in 1987 revealed various irregularities in Vehec's use of FCSU funds. The specifics of these were detailed in a letter dated August 7, 1987, from Luca to Kristofik. At its semi-annual meeting, held August 16-20, 1987, the FCSU board of directors considered the contents of the letter. Having been asked at that meeting to respond to the letter, Vehec prepared an answer, which was considered at a meeting of the executive committee held on September 22, 1987.
 
 
 4
 According to Kristofik, following that meeting, Kristofik, as the supreme president of the FCSU, informed Vehec by letter of the same date that Vehec was suspended without pay effective immediately until a special meeting of the board could be convened. On September 24, 1987, Kristofik told Vehec in person that Vehec was suspended and that he and his family had to vacate the premises at the FCSU headquarters. On November 3, 1987, the board of directors held a special meeting during which, by official vote, Vehec was terminated as executive secretary.
 
 
 5
 Vehec claims that Kristofik, accompanied by Luca and Yencik, discharged him as opposed to suspending him in September of 1987, and ordered him and his family to vacate their living quarters that same day. He alleges further that, despite the by-laws' requirement, he received no written statement of the charges against him which were to be considered at the November 3, 1987 meeting; that he received no notice of that board meeting; and that he was therefore not afforded the opportunity guaranteed him by the FCSU by-laws to appear and defend himself.
 
 
 6
 Vehec appealed the board's November 3rd decision by filing a notice of appeal with the FCSU supreme court on November 24, 1987. On January 9, 1988, after a hearing, that court entered an order upholding Vehec's termination as in conformity with the FCSU by-laws.
 
 
 7
 Vehec did not take what would have been, under the association's internal rules, the next and final appeal of that judgment--an appeal to the FCSU convention. He did, however, request that the FCSU supreme court reconsider its January 9th ruling. He added this request to his appeal of the board of directors' March 23, 1988 decision to expel him from membership in the FCSU. That court declined to do so, ruling on June 3, 1988 that this effort was barred by res judicata. Under FCSU's governing rules, this decision ended appellant's right to challenge the actions taken against him by the association's authorized decision makers.
 
 
 8
 In the months that followed, three articles appeared in the official FCSU publication, Jednota, discussing the above events. Two of these were written by Kristofik, as president of the FCSU, and one by Michael Ridilla, as president of the FCSU supreme court. The District Court noted that Vehec did not allege that these articles were circulated more broadly than to the FCSU membership, or that they were written by Kristofik and Ridilla in capacities other than as officials of this private association.
 
 
 9
 The District Court found that the FCSU is subject to the provisions of section 1702.34(B) of the Ohio Revised Code, and that a plain reading of that provision makes it clear that no state law contract rights arise under the provisions of FCSU's by-laws. The court further found that even if Vehec's reliance on the by-laws were not barred by this provision, his breach of contract claim would nevertheless be barred by Ohio's statute of frauds. The District Court also found that appellant's fourteenth amendment claim failed because he alleged no state action and no state action existed. Appellant also argued that FCSU violated the due process rights afforded him by the FCSU by-laws. The court noted that under Ohio law, in the absence of mistake, fraud, collusion or arbitrariness, the decisions of tribunals of voluntary associations must be accepted by the courts as conclusive. Because appellant produced no evidence demonstrating circumstances warranting judicial intervention, the court accepted the decision of the FCSU tribunals. The District Court also found that appellant failed to make out a claim for intentional or reckless infliction of emotional distress, and did not produce factual support for his claim of defamation. Therefore, the District Court granted appellees' motion for summary judgment.
 
 
 10
 Appellant first argues that the District Court erred in awarding summary judgment for appellees because appellant was "tried and condemned in absentia by the Board in violation of the due process provisions of the Bylaws." In response to this contention, the District Court responded:
 
 
 11
 On the question of the extent to which any court, either state or federal, may review the decisionmaking procedures of private associations incorporated under Ohio law, the law is well-settled. In the absence of mistake, fraud, collusion, or arbitrariness, the decisions of the tribunals of such voluntary associations must be accepted by the courts as conclusive. State ex rel. Ohio High School Athletic Association v. Judges of the Court of Common Pleas of Stark County, 173 Ohio St. 239, 247, 181 N.E.2d 261, 266-67 (1962).
 
 
 12
 The court found that Vehec had not produced any evidence demonstrating circumstances warranting judicial intervention.
 
 
 13
 Appellant argues that the District Court misapprehended the meaning of the Ohio Athletic Association case because it failed to quote the following language from the opinion:
 
 
 14
 Even more to the point is the following language ...:
 
 
 15
 "The decisions of any kind of voluntary society or association in disciplining, suspending, or expelling members are of a quasi judicial character. In such cases the courts never interfere except to ascertain whether or not the proceeding was pursuant to the rules and laws of the society, whether or not the proceeding was in good faith, and whether or not there was anything in the proceeding in violation of the laws of the land."
 
 
 16
 State ex rel. Ohio High School Athletic Ass'n v. Judges of the Court of Common Pleas, 173 Ohio St. 239, 247, 181 N.E.2d 261, 266 (1962) (quoting 4 American Jurisprudence 466, section 27).
 
 
 17
 We do not believe the omission of this language indicates that the District Court misapprehended the Ohio court's holding. Considering this language as well as that quoted by the District Court, we agree with the court's finding that appellant did not produce any evidence demonstrating circumstances warranting judicial intervention.
 
 
 18
 We also agree with the District Court that appellant has not shown that FCSU's by-laws were violated. Appellant asserts that the power to permanently dismiss a supreme officer is granted exclusively to the board of directors by sections 9.04(e) and (f). These sections state that the board has jurisdiction "to hear and pass upon all complaints, grievances or violation[s] of the Bylaws and to impose penalty as provided in Section 16 of these Bylaws,"[2] and may "[d]ismiss from office after due hearing and a trial, any supreme or local officer ... who fails to perform his (her) duties, or violates any provision of these Bylaws." These sections do not grant exclusive authority to the board. In fact, the president, Kristofik, acted pursuant to his authority to dismiss officers for violations of the by-laws, granted by section 7.03(j). This section provides, in part:
 
 
 19
 President is to preside at all meetings of the Supreme Officers and shall:
 
 
 20
 * * *
 
 
 21
 * * *
 
 
 22
 (f) Arrange to investigate any irregularities and misunderstandings existing in any branch. All reports received shall be submitted to the Board of Directors at their next meeting.
 
 
 23
 * * *
 
 
 24
 * * *
 
 
 25
 (j) Dismiss Supreme Officers, officers of local branches for violations of these Bylaws or orders of the Supreme President, with a right of appeal.
 
 
 26
 * * *
 
 
 27
 * * *
 
 
 28
 (m) Render decisions on all questions concerning the construction of Bylaws which shall be binding on all Officers, unless reversed by the Board of Directors or the Convention.
 
 
 29
 * * *
 
 
 30
 * * *
 
 
 31
 (o) With the approval of two-thirds of the Board of Directors, reprimand and for a serious offense, suspend any Supreme Officer for failure to perform his (her) duties.
 
 
 32
 Section 7.03 does not require a trial.[3] Thus appellant's argument that because he did not have a trial, the by-laws were violated, is without merit.
 
 
 33
 Section 7.03 does afford appellant a right of appeal. Appellant availed himself of this right. He filed a notice of appeal with the FCSU supreme court on November 24, 1987, and on January 9, 1988, after a hearing, the supreme court entered an order upholding Vehec's termination as in conformity with the FCSU by-laws. Appellant waived his right of further appeal to the FCSU convention by failing to appeal within the time period mandated by the by-laws. Thus appellees did not violate the by-laws. Further, appellant's argument that he was denied due process is without merit in light of these procedural protections. He was provided with notice and an opportunity to defend himself, and therefore he was not denied due process. Normali v. Cleveland Ass'n of Life Underwriters, 39 Ohio App.2d 25, 31, 315 N.E.2d 482 (1974).
 
 
 34
 Appellant next argues that the District Court erred in finding that there was not an enforceable employment contract in effect at the time of Vehec's termination. Appellant argues that his election to the office of executive secretary created a legally binding contract between him and the FCSU under the terms and conditions of the by-laws. He argues that section 4.03 of the by-laws, entitled "Member Contract" states that "[t]he contract agreement between the Society and the member shall contain ... (3) Bylaws of the Society." This membership contract, however, is wholly unrelated to any employment contract appellant may have had with the FCSU. Appellant also argues that the proceedings of the convention that elected him as executive secretary were memorialized by written minutes, and that these minutes together with the by-laws are evidence of a contract. However, as the District Court found, the FCSU, as a non-profit corporation organized under the law of Ohio, is subject to the provisions of section 1702.34(B) of the Ohio Revised Code, which provides in part:
 
 
 35
 (B) Unless the articles or the regulations otherwise provide, ...
 
 
 36
 * * *
 
 
 37
 * * *
 
 
 38
 (2) Any officer may be removed, with or without cause, by the persons authorized to elect or appoint him without prejudice to the contract rights of such officer. The election or appointment of an officer for a given term, or a general provision in the articles, the regulations, or the bylaws with respect to term of office, shall not be deemed to create contract rights....
 
 
 39
 Ohio Rev.Code Ann. Sec. 1702.34(B) (Anderson 1985) (emphasis added).
 
 
 40
 The by-laws of FCSU do not "otherwise provide." Therefore, no state law contract rights arise as a result of appellant's election.[4]
 
 
 41
 Appellant next argues that the District Court erred in finding that no genuine issue of material fact existed with respect to appellant's intentional or reckless infliction of emotional distress claim and that appellees were entitled to judgment as a matter of law.[5] To be liable for this tort, the appellees must have "by extreme and outrageous conduct intentionally or recklessly cause[d] severe emotional distress' " to appellant. Yeager v. Local Union 20, 6 Ohio St.3d 369, 374, 453 N.E.2d 666, 671-72 (1983) (quoting Restatement of the Law 2d, Torts 73, section 46(1), comment d (1965)). The conduct must have been " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " Id. at 375. The Ohio courts have applied this standard with even greater stringency in employment actions. Crawford v. ITT Consumer Fin. Corp., 653 F.Supp. 1184, 1192 (S.D.Ohio 1986). We agree with the District Court that the conduct complained of in the present case cannot meet these high standards.
 
 
 42
 Appellant's final argument is that the District Court erred in finding that there were no genuine issues of material fact regarding the defamation cause of action, and that appellee was entitled to judgment as a matter of law. The publications in which the allegedly defamatory articles were printed are protected by a qualified privilege, because the author and the readers share "a common interest, and the communication is of a kind reasonably calculated to protect or further it." Hahn v. Kotten, 43 Ohio St.2d 237, 244, 331 N.E.2d 713, 718 (1975). In order to recover, appellant must have demonstrated falsity and actual malice. We agree with the District Court that appellant failed to go beyond his pleadings to produce factual support for his allegation of actual malice. Appellant has not convinced us otherwise in his appeal.
 
 
 43
 Accordingly, we AFFIRM the District Court's order granting appellees' motion for summary judgment.
 
 
 
 [1]
 The Honorable Julian Abele Cook, Jr., Chief United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [2]
 Section 16.03(a) provides:
 When charges are preferred before the Board of Directors, the accused may be notified at least fifteen (15) days in advance of the time and place of the hearing and must receive a written statement of the charge against him (her).
 
 
 [3]
 Section 16.03(b)(3) provides that no trial shall be necessary "whenever the Bylaws provide for ... removal from office or expulsion or fine without trial or notice."
 
 
 [4]
 The District Court found that appellant's breach of contract claim would be barred by Ohio's statute of frauds as well. Appellant contends that corporate minutes can constitute a memorandum satisfying the requirements of the statute of frauds. He cites Soteriades v. Wendy's of Fort Wayne, Inc., 34 Ohio App.3d 222, 225, 517 N.E.2d 1011 (1986), for this proposition. The minutes in that case, however, were much more detailed than those in the present case. In the present case, the minutes cannot be said to "contain the essential terms of the contract, expressed with such clearness and certainty, that they may be understood from the writing itself, or some other paper to which it refers, without the necessity of resorting to parol proof." Kling v. Bordner, 65 Ohio St. 86, 99, 61 N.E. 148 (1901)
 
 
 [5]
 Appellant also argues that he is entitled to punitive damages because the alleged breach of contract amounts to an independent willful tort. Because we have found that no contract and therefore no breach exists in the present case, we need not reach this issue