**Gloria ANTHONY, Plaintiff,**

v.

**TRW, INC. Defendant.**

**Civ. A. No. C87–2597.**

United States District Court,
N.D. Ohio, E.D.

May 8, 1989.

Avery S. Friedman, Cleveland, Ohio, for plaintiff.

Joseph S. Ruggie, Jr., Daniel A. Ward, Thompson, Hine & Flory, Robert S. Carabell, Cleveland, Ohio, for defendant.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

This is a race discrimination case brought by Gloria Anthony against TRW, Inc., an industrial manufacturing company which employed Anthony as a secretary in its Euclid, Ohio office from October of 1976 to April of 1988. Anthony alleges that TRW violated her federal rights under 42 U.S.C. §§ 1981 and 2000e, and intentionally caused her severe emotional distress in violation of Ohio state law, when it repeatedly denied her improvements in her employment status—such as job upgrades, promotions, and salary increases—and when it eliminated her position without offering to employ her in another capacity in the company. Anthony claims that this disfavored treatment was due to her race, and was also in retaliation for complaints she filed with the EEOC, one in 1980, and one in 1986. She seeks reinstatement, a promotion, back pay and benefits, attorneys fees, and punitive damages. Further, she claims that the harassment and unfair treatment she suffered while employed at TRW caused her serious physical and emotional illness, for which she seeks compensation.

Neither party having requested a jury, this case was tried to the bench. Before hearing any evidence, the Court ruled on TRW's motion for partial summary judgment, granting the motion in part, and denying it in part, as follows:

(1) The motion was granted with respect to the 1985 denial of a job upgrade, because Anthony's May 9, 1986 EEOC complaint was untimely;

(2) The motion was also granted with respect to the September, 1986 denial of a promotion, because Anthony failed to apply for the position in question;

(3) The motion was denied with respect to the May and August, 1986 failures to promote Anthony, because the pre-trial record contained insufficient evidence regarding both the comparative qualifications of Anthony and the white persons promoted in each instance, and also the alleged roles of racial animus and retaliation for an EEOC complaint filed in 1980;

(4) Summary judgment was denied on Anthony's claim that TRW refused her a pay increase in 1987 in retaliation for filing a second complaint with the EEOC

in 1986, because the pre-trial evidence of TRW's knowledge of that claim was conflicting and inconclusive.

(5) Finally, summary judgment was denied on Anthony's state claim of intentional infliction of emotional distress. Although TRW was correct to assert that Title VII precludes this tort claim, 42 U.S.C. § 1981 contains no such bar. Therefore, the Court permitted Anthony to go forward with this claim, having noted however that the degree of "outrageousness" required by Ohio law makes it extraordinarily difficult for plaintiffs to bear their burden successfully.

At the close of Anthony's case, TRW moved the Court to dismiss this action, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. TRW argued that Anthony has failed to present a *prima facie* case of intentional racial discrimination, and that the intentional infliction of emotional distress complained of fails to rise to the level required by Ohio law. Upon consideration of the evidence presented by the plaintiff, the Court finds that it has no choice but to grant TRW's motion. The following discussion shall constitute the Court's Findings of Fact and Conclusions of Law, as required by Rule 52, Federal Rules of Civil Procedure.

■ Anthony asserts claims based on two federal statutes, 42 U.S.C. § 1981, also known as "the Civil Rights Act of 1870", and 42 U.S.C. § 2000e–2, often referred to as "Title VII".

42 U.S.C. § 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. It prohibits racial discrimination in both public and private employment. *Johnson v. Railway Express*

*Co.*, 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1975); *Long v. Ford Motor Co.*, 496 F.2d 500, 504 (6th Cir.1974). In actions premised on 42 U.S.C. § 1981, a plaintiff must prove not only racially-biased intent, but also prove the connection between that intent and the actions or events that caused plaintiff injury. *General Building Contractors Association, Inc. v. Pennsylvania*, 458 U.S. 375, 388–89, 102 S.Ct. 3141, 3148–49, 73 L.Ed.2d 835 (1982); *Leonard v. City of Frankfort*, 752 F.2d 189, 193 (6th Cir.1985). The requisite intent can be demonstrated by either direct or circumstantial evidence. *Leonard*, 752 F.2d at 193. *See U.S. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 714 n. 3, 103 S.Ct. 1478, 1481 n. 3, 75 L.Ed.2d 403 (1983).

Because direct evidence of racially-invidious intent (such as racially pejorative remarks) is often lacking in employment discrimination cases, the Supreme Court has developed evidentiary rules that allow a plaintiff, under specific circumstances, to shift to the defendant the burden of showing the absence of such intent. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). This shifting requires a comparison between the plaintiff and "similarly situated" members of an allegedly-preferred racial group, showing the plaintiff receiving less favorable treatment. *Long*, 496 F.2d at 505. The inference of racial discrimination created by such a comparison can then be dispelled if the defendant can explain this less favorable treatment with legitimate business reasons. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. These evidentiary rules never operate to relieve the plaintiff of the ultimate burden of persuasion regarding intentional discrimination. *Carter v. Duncan–Huggins, Ltd.*, 727 F.2d 1225, 1232 (6th Cir.1984).

In addition to her § 1981 claim, Gloria Anthony has also asserted claims under Title VII, which provides in part:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to

discriminate against any individual with respect to his compensation, terms, and conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin ...

■ Unless a plaintiff attempts to use statistics to show the racially-disparate impact of a policy, which was not undertaken in this case, Title VII requires a similar demonstration of racist intent and a connection between that racism and an adverse employment decision, action, or condition.

Under *McDonnell Douglas,* a plaintiff can establish a Title VII *prima facie* case of discrimination in hiring by satisfying the following criteria:

(i) that [s]he belongs to a racial minority; (ii) that she applied for and was qualified for a job for which the employer was seeking applicants; (iii) that, despite her qualifications, she was rejected; and (iv) that, after her rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

411 U.S. at 802, 93 S.Ct. at 1824. This analysis applies to Anthony's claims that TRW selected less qualified whites instead of promoting her to the position of Benefits Assistant.

The *McDonnell Douglas* model is also applicable to discriminatory treatment claims. *Rasimas v. Michigan Dept. of Mental Health,* 714 F.2d 614 (6th Cir.1983), *cert. denied,* 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537.

Anthony may establish a *prima facie* case of disparate treatment by showing (1) that she was a member of a racial minority; (2) that she and a similarly situated white person received dissimilar treatment; and (3) that sufficient evidence exists from which the Court can find a causal connection between race and the alleged acts of the defendants. *Nichelson v. Quaker Oats Co.,* 573 F.Supp. 1209, 1219 (W.D. Tenn.1983), *rev'd on other grounds,* 752 F.2d 1153 (6th Cir.1985).

Moreover, as in a § 1981 case, a plaintiff's task in a Title VII discrimination case does not conclude with the establishment of a *prima facie* case. The allocation of burdens and order of proof in Title VII cases first enunciated in *McDonnell Douglas* were clarified in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981):

First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." ... Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

The requirements for a cause of action based upon the intentional infliction of emotional distress are stringent in Ohio. To be liable for the intentional infliction of emotional distress, TRW's employees must have "by extreme and outrageous conduct intentionally or recklessly caused[d] serious emotional distress" to Gloria Anthony. *Yeager v. Local Union 20,* 6 Ohio St.3d 369, 453 N.E.2d 666, 671–72 (1983). The *Yeager* Court quoted § 46(1) of the Restatement of Torts, 2d 71 (1965) to describe "extreme and outrageous" conduct:

It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that she has intended to inflict emotional distress, or even that her conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse

her resentment against the actor, and lead her to exclaim, "Outrageous!"

At the close of Anthony's case, TRW moved the Court to dismiss this action under Rule 41(b). That Rule provides:

After the plaintiff, in an action tried by the court without a jury, has completed the presentation of evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision ... operates as an adjudication upon the merits.

In cases where plaintiff's evidence may be conflicting or presents questions of credibility, such questions are for the Court to resolve, as the trier of fact. Where such resolution is necessary, however, the Court must set forth its findings as described in Rule 52. *Bach v. Friden Calculating Machine Co., Inc.,* 148 F.2d 407 (6th Cir.1945).

Although one of defendant's witnesses was permitted to testify out of order in order to accommodate her schedule, neither that testimony nor any of TRW's exhibits have been considered for the purposes of ruling on this motion.

The Court has heard with sympathy the testimony presented by Ms. Anthony. She has described her 12 years of employment with TRW, and the ultimate, dramatic deterioration of her situation there. This deterioration began gradually in 1985—with the arrival of Anthony's final supervisor, Dolores DePasquale—and worsened rapidly through the spring of 1988, when Anthony's physical and emotional condition prompted her to go on long term disability.

The Court has found Ms. Anthony to be a motivated and animated woman. Her employment history and her presentation before this Court suggest that she is capable, productive, and eager to take on new challenges. That she continued to pursue university education through night school, while raising a child, and at the same time sought to expand her job responsibilities, speaks volumes for her determination and ability.

The picture of DePasquale that emerges from Anthony's daily journals, and Anthony's live testimony in court, is one of a rigid, defensive and self-righteous drill sergeant, lacking in understanding of the woman over whom she wielded supervisory authority—a woman with hard-earned expertise, who took pride in her independence and in the quality of her work. In her attempts to discipline her subordinate, DePasquale seemingly failed entirely to appreciate Anthony's personal sensitivity and pride. However, being the only black person in a department supervised by someone of Mrs. DePasquale's temperment, does not, in and of itself, equate to the kind of race discrimination in employment that is prohibited by the federal statutes outlined above.

To state a *prima facie* case of intentional racial discrimination under *McDonnell Douglas,* Anthony must either produce evidence of racial motivation on the part of the TRW employees who made decisions adverse to her, or she must demonstrate that the adverse treatment she received was disproportionate to the treatment received by white TRW employees in comparable situations. Although the Court is only too aware of the persistent and ugly reality of racism in our society, and was moved by plaintiff's heartfelt assertion that she experienced racial bias, the record in this case fails to document Anthony's claim that racism in fact distorted the terms and conditions of her employment at TRW.

Anthony asserts that TRW's failure to promote her in 1986 to the position of Benefits Assistant was wrongful because she was more qualified than the person selected. She contends that either intentional racial discrimination, or a desire to

retaliate against Anthony for filing an EEOC complaint in 1980, prompted TRW's selection of a white employee instead of Anthony. To prove this claim Anthony would have had to produce evidence not only regarding her own qualifications for that position, but also regarding those of the person hired instead. This Ms. Anthony failed to do. Anthony produced no evidence to identify the decisionmaker. Further, she provided neither direct evidence of a racially-based rejection of her own application, nor evidence about the successful applicant from which the Court might infer racial animus. The Court cannot infer racism where it has no basis for evaluating whether the white applicant, with whom Anthony must be specifically compared, was situated similarly to Anthony.

Likewise, the charges that TRW acted in retaliation against the plaintiff must be supported with evidence, at a minimum, that the decisionmaking personnel at TRW had knowledge of Anthony's EEOC complaint. Regarding the 1986 promotion, Anthony has not identified who that decisionmaker was, let alone that such person was aware of—and intended to punish Anthony for making—the EEOC filing.

Similarly, regarding TRW's failure to award Anthony a salary increase in 1987, the Court has heard no direct evidence linking this failure with Ms. Anthony's race. Nor is there any evidence demonstrating a disparity between Ms. Anthony's experience and that of any white employee or employees who—like Anthony—received somewhat critical work appraisals, yet nevertheless did receive their raises.

Various of plaintiff's arguments suggest that plaintiff's counsel is possessed of a somewhat less than thorough understanding of Supreme Court doctrine in the race discrimination area. *McDonnell Douglas* and its progeny are clear that a black plaintiff claiming race discrimination must compare her experience with that of specific white individuals who—although possessing comparable relevant attributes—have competed with the plaintiff for a specific position or benefit and have received preferential treatment.

Anthony argues that Debbie Gilbert—who is white—was promoted three times, during the period when, despite taking on additional responsibility, Anthony's job was not upgraded and she was not promoted. Yet, Anthony did not claim, and the evidence does not suggest, that with respect to any of these promotions, Gloria Anthony and Debbie Gilbert ever competed directly. Had such a competition taken place, the Court would need to inquire as to the two applicants' respective qualifications before concluding that racial animus could be inferred. In this case, however, the inquiry never progressed to that point.

The same analysis applies to plaintiff's assertions that Judy Williams—who is also white—was promoted readily, unlike the plaintiff. Williams' employment successes, like those of any white employee in a disparate treatment case, only become relevant to a race discrimination case upon a showing of direct comparison or competition with the complainant.

Anthony also alleged that, although she was fully qualified to be a Benefits Assistant, her applications were repeatedly rejected. The applications of Barbara Moore and Sharon Holt, on the other hand, met with favorable responses. Because plaintiff's counsel has failed to introduce sufficient evidence to enable the Court to evaluate the applications of these women, no *McDonnell Douglas* comparisons are possible. In any case, however, given that one of them is white (Moore), and the other black (Holt), it is hard to see how evidence of these two promotions would have supported Anthony's race discrimination claim, had it been submitted to the Court.

Because she did not identify white employees in circumstances comparable to hers, who received more favorable treatment from TRW, applicable principles of Supreme Court law and the law of this circuit prohibit the Court from inferring racism based solely on the fact that Anthony was the lone black employee in her work-unit, or on her belief and sworn assertion that racial animus infused the treatment she received, or on the evidence that she suffered a severe personality clash

with her unyielding and insensitive supervisor.

■ The overwhelming portion of the evidence presented appears less relevant to the race discrimination claims than to Anthony's claim of intentional infliction of emotional distress. Anthony testified at greatest length regarding her demoralizing relationship with DePasquale. Through the plaintiff's testimony, Ms. DePasquale appears to this Court to have been, at best, inept in her management approach. The Court notes with some irony her consistently low rating of Anthony's interpersonal ability. However, the Ohio courts have stringently applied the intentional infliction standards in employment actions. *Crawford v. ITT Consumer Financial Corp.*, 653 F.Supp. 1184, 1192 (S.D.Ohio 1986). Mere harassment is not enough; neither is humiliation or embarrassment. The Court therefore has no choice but to conclude that this conduct was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

Defendant TRW's motion to dismiss Anthony's complaint, as amended, for failure to make out a *prima facie* case of racial discrimination under 42 U.S.C. §§ 1981 or 2000e–2, and for failure to state a claim of intentional infliction of emotional distress for which relief may be granted under Ohio law, is hereby granted, with prejudice, each side to bear its own costs.

IT IS SO ORDERED.