47 F.3d 1168
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Billiejean GEBERS, Plaintiff-Appellant,
v.
COMMERCIAL DATA CENTER INC., Don Klan, Defendants-Appellees.
 No. 93-4011.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1995.
 
 Before: RYAN and BOGGS, Circuit Judges; and ROSEN, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Plaintiff, BillieJean Gebers, appeals from the district court's entry of summary judgment for the defendants in this Title VII, 42 U.S.C. Sec. 2000e, case alleging discrimination on the basis of sex. We are asked to determine whether the district court erred: (1) in holding that failure to name the alleged harasser in the Equal Employment Opportunity Commission complaint precluded judgment for the plaintiff; (2) in granting summary judgment for the defendants on the plaintiff's quid pro quo sexual harassment claim; (3) in granting summary judgment for the defendants on the plaintiff's hostile work environment sexual harassment claim; and (4) in granting summary judgment for the defendants on plaintiff's intentional infliction of emotional distress claim.
 
 
 2
 We conclude that the district court did not err in granting summary judgment for the defendants because there was no genuine issue as to whether the advances made by the defendant were unwelcome. Accordingly, the judgment of the district court is affirmed.
 
 I.
 
 3
 BillieJean Gebers worked as an "on-call" employee for Commercial Data Center, Inc. The incidents of harassment allegedly began when Donald Klan, also a Commercial Data employee, offered to get Gebers a cup of coffee. Klan is the brother of Commercial Data Center's owner. Gebers declined because she was "not interested" and thought accepting would "cause problems."
 
 
 4
 However, in January 1991, Gebers told Klan that she would have dinner or coffee with him if he wished. Over the next several months, Klan and Gebers engaged in a dating relationship. During this relationship, Klan gave Gebers many gifts, including a negligee and underwear. He also gave a surprise birthday party for Gebers. Klan and Gebers often went together to dinner and to the mall. Klan also attended Geber's mother's birthday party, at Geber's invitation.
 
 
 5
 Each time they went out together, with one exception, Klan would accompany Gebers to the door and come into her house without objection. Klan would then proceed to her living room where the two would kiss. Gebers claims she continued the relationship only because she feared losing her job.
 
 
 6
 The relationship ended when Klan asked Gebers to switch her child visitation weekend so the two could spend the weekend together. Gebers refused to change her plans; Klan rarely spoke to her thereafter.
 
 
 7
 Gebers alleges that after she terminated the relationship, Klan engaged in retaliatory conduct. She was removed from her machine job and returned to working as a mailer. Although the switch did not result in a decrease in pay, Gebers believed Klan was laughing at her, intentionally avoiding her, and not assisting her with her job when he assisted other employees. Klan told other employees, in Geber's presence, that they should be careful about choosing with whom they sit, and he called either Gebers or another employee a "slut" in Gebers's presence.
 
 
 8
 On July 2, 1991, Klan asked Gebers to wash the windows in the facility at a time when other employees were engaged in cleaning activities as well. After this incident, Gebers sought medical treatment and was prescribed medication for her nerves. She never returned to Commercial Data. She filed suit shortly thereafter.
 
 II.
 
 9
 The district court granted summary judgment for the defendants and held that: (1) Don Klan was entitled to summary judgment because Gebers failed to name him in her Equal Employment Opportunity Commission complaint; (2) Commercial Data was entitled to summary judgment on Gebers's claim of quid pro quo harassment because the evidence failed to show unwelcome sexual advances; (3) there was insufficient evidence of hostile work environment sexual harassment; (4) the CivilRights Act of 1991 does not apply retroactively; (5) a cause of action for negligent infliction of emotional distress resulting from an employment situation is not recognized in Ohio; and (6) there was no evidence probative of extreme and outrageous conduct as is required to prove intentional infliction of emotional distress.
 
 
 10
 To prevail under a quid pro quo theory of sexual harassment, a plaintiff must assert and prove:
 
 
 11
 "1) that the employee was a member of a protected class; 2) that the employee was subject to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors; 3) that the harassment complained of was based on sex; 4) that the employee's submission to the unwelcomed advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment; and 5) the existence of respondeat superior liability."
 
 
 12
 Kauffman v. Allied Signal, Inc., 970 F.2d 178, 186 (6th Cir.), cert. denied, 113 S.Ct. 831 (1992) (quoting Highlander v. KFC Nat'l Management Co., 805 F.2d 644, 648 (6th Cir.1986)).
 
 
 13
 Plaintiff has not satisfied these requirements.
 
 
 14
 First of all, Gebers was required, at a minimum, to show that the sexual advances by Klan were unwelcome. Meritor Sav. Bank v. Vinson, 477 U.S. 57 (1986). The totality of the circumstances of Gebers's conduct indicates consent rather than coercion. Although voluntariness and consent are not defenses to a sexual harassment claim, evidence of consent is relevant in determining whether sexual advances are unwelcome. Id. at 69. Gebers continued to accept invitations to dinner for approximately six months, accepted gifts from Klan, kissed him, and even invited him to her mother's birthday party. Moreover, the first dinner invitation was extended by Gebers, not Klan. Even accepting her claim that she went out with Klan because she feared angering him, Gebers failed to show that Klan's overtures were unwelcome.
 
 
 15
 Further, in her deposition, Gebers admitted that no one, including Klan, ever conditioned her continued employment or any particular job assignment on continuing her dating relationship with Klan. Indeed, she told her friend, Vivian Peek, that after she stopped seeing Klan, he was "nice" and "really polite" about the breakup. Moreover, Gebers did not identify a single job benefit which she received by virtue of her having dated Klan.
 
 
 16
 Gebers did testify regarding one purported "job detriment" she claims to have suffered as a result of her relationship with Klan; that after she ended the relationship, she was taken off the inserter machine and assigned manual inserting tasks. However, she admitted that she had no idea who made the decision to take her off the machine, and the record shows that employees moved from machine to manual tasks and vice-versa on a regular basis. Thus, the changing from machine to manual work does not amount to evidence of a tangible job detriment. For these reasons, we hold that the district court did not err in entering summary judgment for the defendants on plaintiff's quid pro quo claim.
 
 III.
 
 17
 We also find that summary judgment was properly entered on plaintiff's hostile work environment claim.
 
 
 18
 This circuit had required a plaintiff to prove five elements to prevail in a hostile work environment action. Since the Supreme Court's decision in Harris v. Forklift Systems, Inc., 114 S.Ct. 367 (1993), a plaintiff must prove only the following four elements: 1) the employee was a member of a protected class; 2) the employee was subjected to unwelcomed sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; 3) the harassment complained of was based upon sex; and 4) the existence of respondeat superior liability. See id. at 371; Rabidue v. Osceola Ref. Co., 805 F.2d 611, 619-20 (6th Cir.1986), cert. denied, 481 U.S. 1041 (1987).
 
 
 19
 Further, the plaintiff must prove that the work environment is one a reasonable person would perceive as hostile or abusive. Harris, 114 S.Ct. 367 (1993). This objective component requires that the conduct complained of be " 'severe or pervasive' " and not encompass the " 'mere utterance of an ... epithet which engenders offensive feelings in a[n] employee.' " Id. at 370 (citation omitted).
 
 
 20
 Plaintiff claims she was subjected to a sexually hostile work environment because after she broke things off with Klan, he would not speak to her, avoided her, and would not voluntarily help her on the job. She also claims that on one occasion, Klan referred to either her or to another female employee who was seated near her as a "slut." However, as the district court found, the single incident of Klan calling plaintiff or another female a slut on one occasion is insufficient evidence from which a jury might infer the existence of a sexually hostile work environment. All of the other "evidence" which plaintiff points to is "sex neutral."
 
 IV.
 
 21
 Plaintiff's remaining state law intentional infliction claim also fails as a matter of law.
 
 
 22
 In order to support a claim for the tort of intentional infliction of emotional distress under Ohio law, four elements must be proved:
 
 
 23
 a) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; b) that the actor's conduct was extreme and outrageous, that it went beyond all possible bounds of decency and that it can be considered as utterly intolerable in a civilized community; c) that the actor's actions were the proximate cause of the plaintiff's psychic injury; and d) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure it.
 
 
 24
 Bellios v. Victor Balata Belting Co., 724 F.Supp. 514, 520 (S.D.Ohio 1989). See also Pyle v. Pyle, 11 Ohio App.3d 31, 463 N.E.2d 98 (1983); Yeager v. Local Union No. 20, 6 Ohio St.3d 369, 453 N.E.2d 666 (1983).
 
 
 25
 As the Ohio Supreme Court emphasized in Yeager, supra, " '[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " Id. at 375 (emphasis added) (citation omitted). Liability " 'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' " Id. (citation omitted).
 
 
 26
 Applying the foregoing standards in the employment context, courts repeatedly have held that conduct much worse than the conduct at issue in this case was not so "extreme and outrageous" so as to establish the basis for a claim of intentional infliction of emotional distress. See Taylor v. National Group of Cos., Inc., 729 F.Supp. 575, 577-578 (N.D.Ohio 1989); Anthony v. TRW, Inc., 726 F.Supp. 175, 178-179 (N.D.Ohio 1989); Bellios, supra; Crawford v. ITT Consumer Fin. Corp., 653 F.Supp. 1184, 1191-92 (S.D.Ohio 1986).
 
 
 27
 Under the foregoing standards, it is clear that the district court did not err in finding that the conduct plaintiff complained of in this action was insufficient to support a claim of intentional infliction of emotional distress.
 
 V.
 
 28
 For all of the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation