OPINION
{¶ 1} Appellant, Barry P. Tenney, appeals the entry of summary judgment by the Trumbull County Court of Common Pleas with respect to his claim for intentional/reckless infliction of emotional distress. That court entered summary judgment in favor of defendants-appellees, General Electric Company ("General Electric"), Joanne Deibold nka O'Neil, Bill Callahan, and Terry Larson. For the following reasons, we reverse the judgment entry of the court below as it pertains to *Page 2 
General Electric and to O'Neil. The judgment entry as it pertains to Larson is affirmed.
 {¶ 2} Tenney has been an employee of General Electric at its Niles/Mahoning Glass Plant since 1973. Tenney, who is a homosexual, has experienced harassment on account of his sexual orientation during the course of his employment with General Electric.
 {¶ 3} On September 29, 2000, Tenney filed a three-count complaint against General Electric, O'Neil (the plant nurse), Callahan (a plant employee and former union president), Larson (a plant foreman), and Lanette Harbin (a plant employee). Count one of Tenney's complaint alleged tortious interference with an employment relationship, count two alleged intentional/reckless infliction of emotional distress, and count three alleged discrimination based on sexual orientation under Ohio law. The claims against Harbin were eventually dismissed due to a bankruptcy filing by her.
 {¶ 4} Appellees filed Civ.R. 12(B)(6) motions to dismiss the complaint for failure to state a claim upon which relief can be granted. On March 6, 2001, the trial court granted the appellees' motions with respect to all of Tenney's claims. Tenney appealed to this court from the trial court's dismissal of the latter two of his three claims (i.e. intentional/reckless infliction of emotional distress, and discrimination based on sexual orientation under Ohio law). He did not appeal the dismissal of the first count, dealing with tortious interference with an employment relationship. *Page 3 
 {¶ 5} In Tenney v. Gen. Elec. Co., this court affirmed the dismissal of Tenney's claim for discrimination based on sexual orientation under Ohio law.[1] This court reversed the dismissal of the claim for intentional/reckless infliction of emotional distress, "[s]ince it [did] not appear beyond doubt that [Tenney] can prove no set of facts which would entitle him to relief," and remanded this cause for further proceedings.[2]
 {¶ 6} Following remand to the trial court, General Electric filed a motion for summary judgment, as did O'Neil, Callahan, and Larson, regarding the intentional/reckless infliction of emotional distress claim. Tenney opposed the motions filed by General Electric, O'Neil, and Larson, but not the motion filed by Callahan. On September 15, 2005, the trial court granted appellees' motions for summary judgment.
 {¶ 7} Tenney timely appeals and raises the following single assignment of error:
 {¶ 8} "The trial court committed reversible error in granting the motions for summary judgment filed by appellees General Electric Company, Terry Larson and Joanne O'Neil."
 {¶ 9} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is *Page 4 
made, that party being entitled to have the evidence * * * construed most strongly in the party's favor."
 {¶ 10} A trial court's decision to grant a motion for summary judgment is reviewed by an appellate court under a de novo standard of review.[3] A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision.[4]
 {¶ 11} The sole claim before the trial court was Tenney's claim for intentional/reckless infliction of emotional distress.
 {¶ 12} "One who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress."[5]
 {¶ 13} "In a case for intentional infliction of emotional distress, a plaintiff must prove (1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress."[6]
 {¶ 14} With respect to the requirement that the conduct alleged to be "extreme and outrageous," the Supreme Court of Ohio has adopted the following position: *Page 5 
 {¶ 15} "`Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. * * * The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.'"[7]
 {¶ 16} Tenney's claims are based on the following incidents.
 {¶ 17} In 1996, Tenney was working with General Electric employees, Diane Lissi and Denise Hivick, inspecting glass lenses for use in automobile headlights. Each employee was inspecting lenses at separate tables. Tenney testified that he was hit in the chest "real hard" by a stack of glass. When he looked up, Tenney saw Lissi and Hivick laughing and looking at him. About eight minutes later, Tenney was hit by another stack of glass. This time, some of the glass hit his groin area causing his penis to bleed. Again, Lissi and Hivick were looking at Tenney and laughing. Tenney asked the women why they had hurt him. According to Tenney, Lissi replied to the effect that, if she were going to cut off his penis, she would use a knife, not glass.
 {¶ 18} Tenney reported the incident to a foreman but, to Tenney's knowledge, no disciplinary action was taken against Lissi or Hivick. Tenney testified that, as a *Page 6 
result of the attack, he suffers from a continuous injury in his groin. Tenney also testified that the attack terrorized and humiliated him so that he is afraid to work at the plant.
 {¶ 19} Also in 1996, Tenney's partner, Larry Carr, came to the plant because of an emergency at home. When Larson, Tenney's foreman, saw Carr he told Carr to leave. Larson then berated Tenney, calling him a "motherfucker" and other obscenities, and warning Tenney that Carr should not ever come to the plant again.
 {¶ 20} Tenney went to Doug Lowery, who works in the offices at General Electric, and complained about Larson's behavior. Tenney believed Larson's conduct was discriminatory, because he has seen the foreman's wife visit him at the plant. Tenney explained that, although he and Carr cannot be married, their relationship is like that of husband and wife. Tenney referred to Carr as his "mate."
 {¶ 21} About a half-an-hour later, Tenney noticed Larson and Lowery running in and out of the men's restroom and laughing. Tenney went inside and found graffiti to the following effect: "[c]ome to Barry's ship of fools. You can F him up the — and he'll give you blow jobs and he'll be your first mate."
 {¶ 22} Tenney then told a supervisor about the graffiti. Thereupon, the bathroom door was locked and the graffiti was painted over within a few hours.
 {¶ 23} Other testimony in the record demonstrates that graffiti, generally about homosexuals, including references to AIDS, was common in the plant's bathrooms. Some of the graffiti was directed specifically against Tenney. One piece of graffiti read: "It's Adam and Eve, * * * not Adam and Eve and Steve and Barry." This graffiti remained on the bathroom walls for several months before being painted over. *Page 7 
 {¶ 24} Tenney testified that in 1996 or 1997, two General Electric employees ridiculed him by making pig noises and simulating homosexual sex. Tenney testified that this was done in front of his shift supervisor, John Ealy. Another General Electric employee, Daniel Thomas Robbins, testified that an employee named Greg Dominic continued to make pig noises around Tenney for "quite a while" and "definitely more than four or five times" before being told to stop by management.
 {¶ 25} Tenney testified to other instances where General Electric employees referred to him as "fag" or "queer."
 {¶ 26} In 1999, Tenney went to see the plant nurse, O'Neil, about obtaining replacement safety glasses. Tenney testified that O'Neil made several offensive remarks to him on this occasion. According to Tenney, O'Neil recalled telling her pregnant daughter to talk to her fetus so that the child would not become a homosexual. O'Neil also allegedly told Tenney that a man becomes a homosexual if he is raped as a child and that if Tenney had better parents, he would not have been raped and would not be a homosexual.
 {¶ 27} Tenney filed a grievance with the union about O'Neil's behavior. Tenney filed a second grievance against O'Neil for talking to one of Tenney's co-workers about the facts underlying the first grievance. Tenney also complained of O'Neil's behavior to several members of General Electric's human resources office and was assured that O'Neil would not accost him in the future.
 {¶ 28} Later in 1999, Tenney went to O'Neil because he had chest pains. Tenney testified that O'Neil apologized for her previous comments and asked if she could give Tenney a "motherly hug." Tenney agreed, since O'Neil was blocking the *Page 8 
doorway. Tenney testified that O'Neil gave him an erotic embrace, pressing her breasts into him, putting her lips to his neck and his ear, and rubbing her hands up and down his back and "tailbone." Tenney told O'Neil that he wanted to return to work, but O'Neil pressed into him harder and pushed him backwards. Tenney tried to break free and O'Neil kissed his neck and ear and told him that she loved him and that God had sent him to her. Finally, O'Neil allowed Tenney to leave. Tenney described the incident as a "full sexual encounter." After this second incident with O'Neil, Tenney filed a third grievance.
 {¶ 29} An investigation of these incidents occurred. O'Neil denied making the statements Tenney attributed to her. In addition, the co-worker with whom O'Neil allegedly discussed the matter also denied the conversation with O'Neil. General Electric concluded that neither the labor agreement nor the company's policy on sexual harassment had been violated. General Electric reaffirmed its policy against sexual harassment and discussed it with O'Neil. General Electric stated that it would go over its policy with both management and the hourly workforce. Tenney denies that General Electric has tried to communicate the substance of its policy to its employees.
 {¶ 30} Tenney has testified that these incidents have depressed him, made him suicidal, and have caused extreme psychological distress. He has had to see a therapist and a psychiatrist, who prescribed medication for his anxiety.
 {¶ 31} We will begin by addressing the claims against the individual defendants, Larson and O'Neil. *Page 9 
 {¶ 32} Tenney alleges that Larson shouted obscenities at him without cause and was involved in writing graffiti about Tenney on the bathroom wall, ridiculing his homosexuality. By themselves, these actions do not rise to the level of "extreme and outrageous conduct" that would support a claim for intentional infliction of emotional distress. The law is clear that liability does not attach to mere insults and indignities, such as Larson's conduct.[8]
 {¶ 33} "[T]he Ohio courts have stringently applied the intentional infliction standards in employment actions. * * * Mere harassment is not enough; neither is humiliation or embarrassment."[9]
 {¶ 34} Accordingly, the courts have failed to find offensive and insulting conduct actionable even when directed at a particular individual and when sexual or racial in character.[10]
 {¶ 35} For the foregoing reasons, the trial court's grant of summary judgment in favor of Larson is affirmed.
 {¶ 36} Tenney's claims against O'Neil arise from derogatory comments she made about homosexuals and from her groping of Tenney. O'Neil's comments that homosexuality is the result of childhood rape and that she hoped her grandchild would not be a homosexual are not actionable for the reasons stated above. *Page 10 
Although offensive, they are not so outrageous as to be deemed "utterly intolerable in a civilized community."[11]
 {¶ 37} O'Neil's groping of Tenney presents a different issue. This is the kind of conduct that is truly "extreme and outrageous." Tenney's claim that O'Neil groped him, put her lips to his neck and ear, rubbed up against him and pushed into him in an erotic manner, if proven to be true, exceed all possible bounds of decency in a civilized society, whether committed by a male or a female. Clearly, such actions toward Tenney would constitute intentional acts of offensive touching. Although she claimed she gave Tenney a "motherly hug," O'Neil's embrace as described by Tenney was erotic. In Tenney's words, "my mother never crawled up my body * * * never put [her] lips on my neck and my ear. * * * She was making me physically ill and she was pushing into my sexual body parts." Tenney testified that O'Neil continued to hold him after he tried to pull away and told O'Neil that he wanted to leave. Moreover, the fact that O'Neil was aware of Tenney's homosexuality demonstrates the inherently offensive nature of the contact.
 {¶ 38} Tenney's claim against O'Neil was pled as a claim for intentional/reckless infliction of emotional distress. However, the trial court found that the conduct constituted battery and that the claim was, therefore, time-barred. The Supreme Court of Ohio has repeatedly affirmed that a court, when considering the claims before it, must consider:
 {¶ 39} "[T]he actual nature or subject matter of the case, rather than * * * the form in which the action is pleaded. The grounds for bringing the action are the *Page 11 
determinative factors, the form is immaterial."[12] * * * A person is subject to liability for battery when he acts intending to cause a harmful or offensive contact * * * [that is, contact which is] offensive to a reasonable sense of personal dignity[13] * * * and [such harmful contact results]."[14]
 {¶ 40} In Doe v. First United Methodist Church, the Supreme Court of Ohio concluded that acts of sexual abuse "were clearly intentional acts of offensive touching,"[15] and, thus, constituted battery.[16] "The fact that appellant pled * * * intentional infliction of emotional distress cannot be allowed to mask or change the fundamental nature of appellant's causes of action which are predicated upon acts of sexual battery."[17]
 {¶ 41} In Doe, a minor was sexually abused by a teacher. As stated by the Supreme Court:
 {¶ 42} "Specifically, the claims asserted against Masten were premised upon Masten's having repeatedly initiated and engaged in homosexual contacts with appellant without appellant's consent. Masten's repeated acts of sexual contact with appellant were clearly intentional acts of offensive touching — sexual abuse is not something that occurs by accident. The sexual conduct allegedly forced upon appellant occurred on two hundred to three hundred separate occasions and continued for a three-year period."[18] *Page 12 
 {¶ 43} Thus, the facts in Doe demonstrate a series of unwelcome sexual encounters initiated by an adult against a juvenile student. There is not even a suggestion of sexual harassment in those criminal encounters.
 {¶ 44} By contrast, in the instant matter, a review of the "actual nature or subject matter" of the contact between these two adult individuals demonstrates that O'Neil's conduct is readily distinguishable from the facts in Doe. More importantly, O'Neil's acts are continued evidence of sexual harassment, for purposes of summary judgment, wherein all relevant evidence is construed most favorably toward the non-moving party. A sexual battery can be evidence of sexual harassment even though the statute for battery has expired. This allows the matter to proceed to the jury.
 {¶ 45} In Doe, the actions complained of constituted actual sexual conduct and abuse as defined by statute. In the instant matter, we have a female nurse openly mentally torturing a gay male. The offensive conduct is mental far more than physical and, thus, the "actual nature or subject matter" is the intentional infliction of emotional distress, and not battery.
 {¶ 46} When viewed in that light, it is clear the nurse was not seeking personal sexual gratification for herself, as was the case inDoe, but was instead deliberately humiliating and inflicting emotional distress on a fellow worker. The touching was incidental to the mental abuse in this case. In contrast, the sexual assault was the primary "nature" of the encounter in Doe. The Doe case was predicated upon a series of sexual encounters directed at a vulnerable individual. The instant matter was predicated upon a series of mental assaults directed at a vulnerable individual. The distinction is striking. *Page 13 
 {¶ 47} Looking at the "actual nature or subject matter" of the instant case leads to the conclusion that O'Neil's actions were primarily an intentional infliction of emotional distress and, secondarily, a battery. Thus, it was error for the trial court to impose the one-year battery statute of limitation on the intentional infliction of emotional distress cause of action against Nurse O'Neil.
 {¶ 48} The remaining claim to consider is Tenney's claim against General Electric for intentional/reckless infliction of emotional distress. General Electric does not contest that it had knowledge of the relevant incidents of which Tenney complained.
 {¶ 49} General Electric argues that it cannot be held liable for the conduct of its employees toward Tenney because such conduct was outside the scope of their employment. General Electric relies on the Supreme Court of Ohio decision in Byrd v. Faber, which held: "[i]t is well-established that in order for an employer to be liable under the doctrine of respondeat superior, the tort of the employee must be committed within the scope of employment."[19]
 {¶ 50} Shortly after the Byrd decision, however, the Supreme Court of Ohio decided Kerans v. Porter Paint Co., wherein the court qualified its prior statement:
 {¶ 51} "An employer has a duty to provide its employees with a safe work environment and, thus, may be independently liable for failing to take corrective action against an employee who poses a threat of harm to fellow employees, even where the employee's actions do not serve oradvance the employer's business goals."[20] *Page 14 
 {¶ 52} Under Kerans, General Electric could be held liable for failing to take corrective action regarding the harassment of Tenney where such failure rose to the level of intentional conduct and was of such an extreme and outrageous character as to be utterly intolerable in a civilized community.[21]
 {¶ 53} General Electric counters that Kerans is inapposite because it involved a claim for sexual harassment and because it involved harassing conduct by a manager, not fellow employees. We reject both arguments. The plaintiffs complaint in Kerans included an allegation against the employer for intentional infliction of emotional distress.[22] The Supreme Court of Ohio specifically held that the trial court erred in entering summary judgment on this part of the complaint.[23]
Additionally, the Supreme Court noted that a genuine issue of material fact existed as to whether the harassing employee in Kerans held a supervisory position over the plaintiff.[24] Finally, that court held that this issue was not determinative, because the employer could be found liable for failing to provide a safe work environment regardless of the harassing employee's status vis-à-vis the plaintiff.[25] *Page 15 
 {¶ 54} As between the Byrd and Kerans decisions, the Kerans decision is more on point, because the plaintiff in Kerans was an employee of the defendant-employer, whereas the plaintiff in Byrd was not an employee of the organization sought to be held liable for its employee's conduct.[26] Thus, in Kerans, the court considered an employer's responsibility for providing a safe work environment, which entails regulating the conduct of its employees when they pose a threat of harm to other employees, even though their conduct does "not serve or advance the employer's business goals."[27]
 {¶ 55} General Electric further argues that Tenney's claims are pre-empted by Section 301 of the Labor Management Relations Act and by the Ohio Workers' Compensation Act. We reject both propositions.
 {¶ 56} Section 301 of the Labor Management Relations Act provides as follows: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act * * * may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."[28] *Page 16 
 {¶ 57} The United States Supreme Court interpreted this section as providing federal-court jurisdiction over controversies involving collective-bargaining agreements and "authorizing] federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements."[29]
 {¶ 58} In later decisions, the United States Supreme Court has held that section 301 mandates recourse to federal law in the interpretation of collective-bargaining agreements, thereby precluding state-law causes of action based on the interpretation of such agreements.[30] In other words:
 {¶ 59} "[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law * * * is pre-empted and federal labor-law principles * * * must be employed to resolve the dispute."[31]
 {¶ 60} General Electric did not submit the relevant collective bargaining agreement into the record. However, it argues that Tenney's claim is premised on matters covered by the collective bargaining agreement, "such as work assignments, job duties, and his right to overtime opportunities," and that it is impossible to determine whether the alleged conduct was "extreme and outrageous" without recourse to the collective bargaining agreement. We disagree. *Page 17 
 {¶ 61} Tenney was subjected to insulting and offensive behavior as a result of his sexual orientation over a 25-year period. In his words, Tenney felt that his sexuality had become "a big joke" to his fellow employees and the company. Contrary to General Electric's assertions, it is not necessary to consult the collective bargaining agreement to determine whether belittling someone as a "fag" or a "queer" is extreme and outrageous conduct. Nor is the collective bargaining agreement necessary to determine whether tolerance of such behavior by General Electric is extreme and outrageous. Therefore, Tenney's claim is not pre-empted by Section 301 of the Labor Relations Act.[32]
 {¶ 62} Moreover, Tenney's claims are not barred by the Ohio Workers' Compensation Act.
 {¶ 63} R.C. 4123.74 provides, in pertinent part, as follows:
 {¶ 64} "Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law * * * for any injury * * * received * * * by any employee in the course or arising out of his employment." *Page 18 
 {¶ 65} The Supreme Court of Ohio in Kerans rejected the argument that the workers' compensation statutes barred claims, including claims for the infliction of emotional distress, arising from sexual harassment in the workplace.[33] Though the Kerans decision dealt with a sexual harassment claim instead of intentional infliction of emotional distress, the rationale of the court focused on the employer's duty to provide a safe work environment rather than the substance of the underlying claim.[34] Moreover, the court cited a section of the Restatement in support of its holding that speaks generically of a duty "`to prevent [an employee] from intentionally harming others.'"[35]
 {¶ 66} In Bunger v. Lawson Co., the Supreme Court of Ohio held that the workers' compensation statutes did not bar claims against an employer for "purely psychological injuries."[36]
 {¶ 67} Finally, in Johnson v. BP Chemicals, Inc., that court reiterated its prior holdings that the workers' compensation statutes do not exempt employers from liability for "intentional tortious conduct."[37] Accordingly, Tenney's claim for intentional infliction of emotional distress is not barred by the Ohio workers' compensation statutes. *Page 19 
 {¶ 68} Turning to the merits of Tenney's claim against General Electric, we find that a genuine issue of material fact exists as to whether its conduct regarding harassment of Tenney was extreme and outrageous. The incident that stands out is the sexual groping of Tenney by O'Neil, which is the very definition of "extreme and outrageous." This court has previously held that a single incident is sufficient to overcome a motion for judgment notwithstanding the verdict with respect to an intentional infliction of emotional distress.[38] In addition, other more benign incidents, when considered in their totality, reflect a pattern of inaction by General Electric with respect to the incidents committed against Tenney. General Electric stood by when Tenney was struck by glass in the incident involving Lissi and Hivick; it allowed sexually explicit graffiti to remain on its walls for months; it allowed some employees to make pig noises at Tenney for months before putting a stop to it; and, finally, the incident in which O'Neil gave her obtuse opinions about Tenney's homosexuality. These multiple acts over a period of time and General Electric's inaction or finding no violations of its policies cumulatively create evidence of outrageous conduct on behalf of an employer for purposes of summary judgment. *Page 20 
 {¶ 69} We acknowledge the argument of General Electric that only those incidents that took place within the four-year statute of limitations[39] for acts that constitute intentional infliction of emotional distress are cognizable by the trial court. Therefore, an incident that occurred in 1975 is beyond the statute of limitations, but a review of the record cannot establish whether the incidents that occurred in 1996 are more or less than four years prior to the filing of Tenney's complaint on September 29, 2000. Construing the evidence most strongly in Tenney's favor, we find that all but the 1975 incident is relevant for this analysis.
 {¶ 70} General Electric may not have officially condoned the actions against Tenney, but it allowed the actions to persist and accumulate over the years Tenney has been employed there. We are struck by the similarity in attitude to that of the Porter Paint Company in theKerans case, where the employer was "entirely unconcerned" about harassing conduct toward one of its employees. Substituting the facts of this case for the facts in the Kerans case makes this attitude manifest:
 {¶ 71} "Construing this evidence in the light most favorable to the nonmoving party, [Tenney], there is a genuine issue of material fact as to whether [General Electric] knew or through the exercise of reasonable care should have known of the danger which [certain employees] posed to [Tenney]. The evidence suggests that [General Electric] management knew of as many as five different employees [who] had victimized [Tenney] on a total of at least eight separate occasions. The evidence further suggests that [General Electric] management trivialized these reports and was entirely unconcerned with the threat which [certain employees] posed to the safety of *Page 21 
[Tenney]. Finally, there is nothing in the record which suggests that the management ever fired, demoted, transferred, or even meaningfully disciplined [certain employees] in response to these reports. Consequently, we hold that the trial court erred in granting summary judgment[.]"[40]
 {¶ 72} For the foregoing reasons, Tenney's assignment of error is with merit to the extent indicated. The judgment of the Trumbull County Court of Common Pleas is affirmed as it pertains to Larson, and reversed as it pertains to O'Neil and General Electric, and this matter is remanded for further proceedings consistent with this opinion.
COLLEEN MARY OTOOLE, J., concurs,
DIANE V. GRENDELL, J., concurs in part, dissents in part, with Dissenting Opinion.
[1] Tenney v. Gen. Elec. Co., 11th Dist. No. 2001-T-0035, 2002-Ohio-2975, at ¶ 18.
[2] Id. at ¶ 11.
[3] Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105.
[4] (Citation omitted.) Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711.
[5] Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen Helpers of Am. (1983), 6 Ohio St.3d 369, paragraph one of the syllabus.
[6] Phung v. Waste Mgt., Inc. (1994), 71 Ohio St.3d 408, 410.
[7] (Citation omitted.) Yeager v. Local Union 20, Teamsters,Chauffeurs, Warehousemen Helpers of Am., supra, at 375.
[8] Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen Helpers of Am., supra, at 375.
[9] (Citation omitted.) Anthony v. TRW, Inc. (N.D.Ohio 1989),726 F.Supp. 175, 181.
[10] See Mowery v. Columbus, 10th Dist. No. 05AP-266, 2006-Ohio-1153, at ¶ 50 (racial comments and jokes not actionable); McCafferty v.Cleveland Bd. of Edn. (1999), 133 Ohio App.3d 692, 708 (insulting comments regarding a person's age not actionable); Retterer v. WhirlpoolCorp. (1996), 111 Ohio App.3d 847, 856 (ridicule involving blow-up dolls, cartoons, and an item labeled a "penis warmer" not actionable).
[11] (Citation omitted.) Yeager v. Local Union 20, Teamsters,Chauffeurs, Warehousemen Helpers of Am., supra, at 375.
[12] Hambleton v. R.G. Barry Corp. (1984), 12 Ohio St.3d 179,183.
[13] See Restatement of the Law 2d, Torts (1965) at 35, Section 19.
[14] Love v. Port Clinton (1988), 37 Ohio St.3d 98, 99.
[15] Doe v. First United Methodist Church (1994), 68 Ohio St.3d 531,536.
[16] Id.
[17] Id. at 537.
[18] Id. at 536.
[19] Byrd v. Faber (1991), 57 Ohio St.3d 56, 58.
[20] (Emphasis added.) Kerans v. Porter Paint Co. (1991),61 Ohio St.3d 486, 493.
[21] Id. at 492-493.
[22] Id. at 487.
[23] Id. at 494.
[24] Id. at 491.
[25] Id. at 493.
[26] Byrd v. Faber, supra, at 56; Kerans v. Porter Paint Co., supra, at 487.
[27] Kerans v. Porter Paint Co., supra, at 493.
[28] Section 185(a), Title 29, U.S.Code.
[29] Textile Workers Union of Am. v. Lincoln Mills of Alabama (1957),353 U.S. 448, 451, 456-457.
[30] See, e.g., Local 174, Teamsters, Chauffeurs, Warehousemen Helpers of Am. v. Lucas Flour Co. (1962), 369 U.S. 95, 103-104 andLingle v. Norge Division of Magic Chef, Inc. (1988), 486 U.S. 399,404-406.
[31] Lingle v. Norge Division of Magic Chef, Inc., supra, at 405-406.
[32] See Farmer v. United Bhd. of Carpenters and Joiners of Am.
(1977), 430 U.S. 290, 302.
[33] See Kerans v. Porter Paint Co., supra, at paragraph one of the syllabus.
[34] Id. at 493.
[35] Id. at 491.
[36] Bunger v. Lawson Co. (1998), 82 Ohio St.3d 463, syllabus.
[37] (Citations omitted.) Johnson v. BP Chemicals, Inc. (1999),85 Ohio St.3d 298, 304.
[38] Cooper v. Metal Sales Mfg. Corp. (1995), 104 Ohio App.3d 34,45.
[39] R.C. 2305.09(D). See Yeager v. Local 20, Teamsters, Chauffeurs,Warehousemen Helpers of Am., supra, at 375.
[40] Kerans v. Porter Paint Co., 61 Ohio St.3d at 494.